United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 19, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 06-20937
Summary Calendar

_____

SHABIR HUSSEIN WALJI,

Plaintiff-Appellant,

versus

ALBERTO R. GONZALES, U.S. Attorney General; MICHAEL CHERTOFF, Secretary, Department of Homeland Security; SHARON A. HUDSON, Director, Houston Office, U.S. Citizenship and Immigration Services; EMILIO GONZALEZ, Director, Citizenship & Immigration Services,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Before REAVLEY, WIENER, and DEMOSS, Circuit Judges.

REAVLEY, Circuit Judge:

When, 120 days after the required examination of the applicant, the U.S. Citizenship

and Immigration Services ("CIS") has not granted or denied an application for naturalization,

1

the applicant may ask a U.S. district court to adjudicate the application. Does the 120 days begin to run after the first examination or after the mandatory background investigation is complete? The district court held the latter and dismissed the case for lack of subject matter jurisdiction. Reviewing the record de novo,[1] we affirm.

## I.

Shabir Hussein Walji, a Ugandan native and Canadian citizen, has been a lawful permanent resident since October 16, 1980. Walji filed a Form N-400 Application for Naturalization with CIS in September 2003. An immigration officer interviewed Walji on April 6, 2004 and informed Walji that he passed English language, U.S. history, and U.S. government proficiency examinations. However, the officer informed Walji that action would not proceed on his application until the FBI completed a mandatory national security background check.

When Walji received no answer on his application, he began asking questions. The record is replete with correspondence between Walji and various officials. Two years and a day after his first examination, Walji filed this lawsuit and asked the district court to 1) assume jurisdiction over and adjudicate his application for naturalization or 2) compel the defendants to perform their duty to adjudicate his application.

The district court held that the 120-day time period for approval or denial of the application begins to run only when the application requirements are complete and that

---

[1] *Ghanem v. Upchurch*, 481 F.3d 222, 223 (5th Cir. 2007).

Walji's application was not complete because the FBI had not concluded its background investigation. Because the 120-day time period was never triggered, the district court held that it lacked jurisdiction over Walji's lawsuit and dismissed it. The district court also implicitly denied Walji's petition for a writ of mandamus.

II.

The examination process that accompanies an application for naturalization in Walji's case is governed by federal regulations, which provide in pertinent part that:

> The [CIS] will notify applicants for naturalization to appear before a [CIS] officer for initial examination on the naturalization application *only after the [CIS] has received a definitive response from the Federal Bureau of Investigation* that a full criminal background check of an applicant has been completed.

8 C.F.R. § 335.2(b) (emphasis added). The investigation provided for in the regulation is mandated by statute. *See* Department of Justice Appropriations Act of 1998, Pub. L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448 ("During fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed. . . .") *reprinted in* historical and statutory notes to 8 U.S.C.A. § 1446; *see also* 8 U.S.C. § 1446(a).

An immigration officer administers an examination, which includes tests in English language, United States history, and United States government, § 335.2(c), and then "[a]

3

decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2," § 335.3(a). By statute,

> If there is a failure to make a determination [on the application for naturalization] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b).

III.

Walji contends that § 1447(b)'s 120-day time period began to run on the date of the examination by the immigration officer, notwithstanding the fact that the FBI had not—and still has not—completed its background investigation. Walji cites several district court cases to that effect,[2] but Walji, the Government, and the district court all recognize contrary district court opinions[3] and the absence of any circuit court resolution of this issue.

It is clear in this case that events have occurred—or not occurred—out of order. Before the officer administered the examination to Walji, the FBI was supposed to provide

---

[2] *E.g., Khelifa v. Chertoff*, 433 F. Supp. 2d 836 (E.D. Mich. 2006) (holding that the court had jurisdiction but remanding for a prompt determination of the application); *El-Daour v. Chertoff*, 417 F. Supp. 2d 679 (M.D. Pa. 2005) (holding as in *Khelifa*); *Castracani v. Chertoff*, 377 F. Supp. 2d 71 (D.D.C. 2005) (remanding with instruction to approve the application).

[3] *E.g., Danilov v. Aguirre*, 370 F. Supp. 2d 441 (E.D. Va. 2005).

4

a "definitive response" that its background investigation was complete. That did not happen. Instead the officer went ahead with the examination. There is nothing inherently pernicious in conducting the process out of order,[4] but we will not upset the statutory and regulatory scheme because things occurred out of order.

Walji argues for a "plain meaning" interpretation of 8 U.S.C. § 1447(b). Under his theory, the statute's use of the words "date" and "conducted" makes the examination a single event that triggers the 120-day period. Walji also argues that because the statute differentiates between examinations, as in § 1446(b), and investigations, as in § 1446(a), we should not read the examination described in § 1447(b) as tethered to the required security investigation. That would be a reasonable construction of the law, but it is not necessarily the command.

First, the plain meaning of a statutory provision should not render another section of the statute superfluous.[5] That would be the result under Walji's reading. Walji's theory deprives 8 C.F.R. § 335.2(b) of any force because all that is required to circumvent the security investigation requirement is for CIS to proceed with its examination. Second, while Congress probably contemplated that the examination described in § 1447(b) would be a single event that triggered the 120-day time period, Congress clearly intended the FBI's

---

[4] The plethora of unpublished district court opinions on this issue may indicate that CIS finds some utility in proceeding without the FBI's response.

[5] *See Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 2125 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute.") (internal quotations omitted).

security investigation to occur before that examination takes place.

Looking to the statutory and regulatory framework as a whole, from which we draw inferences of intent,[6] we cannot read the word "examination" in 8 U.S.C. § 1447(b), the triggering event for the 120-day period, to mean an examination that is premature because the FBI investigation mandated by 8 C.F.R. § 335.2(b) has not occurred. We therefore hold that when the CIS examination is premature because the mandatory security investigation is not complete, the 120-day time period of 8 U.S.C. § 1447(b) does not begin to run until CIS receives the FBI's "definitive response," described in 8 C.F.R. § 335.2(b).

We also affirm the district court's denial of the writ of mandamus. Government delay alone, unless it is shown to be in bad faith or extraordinary, does not warrant such an extraordinary remedy. *C.f. In re Monroe Commc'n Corp.*, 840 F.2d 942, 945 (D.C. Cir. 1988) ("Mandamus is an extraordinary remedy, warranted only when agency delay is egregious.").

AFFIRMED

---

[6] *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349, 104 S. Ct. 2450, 2456 (1984).